Yes, I am your honor. Yes, so am I, I can hear it. Yes, me too your honor. I think it's come in front of a phone that doesn't have, that I don't have a number for. All right, so everybody please mute their phone unless you're speaking we're going to, I guess, first here from Mr younger on behalf of Sergeant Ferrara. And then Mr Garber for officers Santiago, correct. That's correct, your honor. Yes, your honor. Both here. Okay. And then after that we'll hear from Mr. Brown and Mr. Knudson for the city and Mr. So, all right, Mr younger you're up first you reserved one minute for rebuttal and you'll be eight minutes total, so you get the first three minutes before we interrupt. So go ahead. May it please the court. It's even younger from Patterson Belknap for Sergeant Ferrara. This appeal raises a key issue of whether there was probable cause to arrest, given the plaintiff's own admission that he disobeyed a police order to disperse. There were also issues of whether Sergeant Ferrara can be held liable for prosecution which he had no direct involvement, and whether the city arbitrarily withheld indemnity from him. So probable cause, as we know, is a complete defense to the false arrest complaint. Here plaintiff's own testimony established probable cause for two different crimes. One, obstructing governmental administration, and two disorderly conduct. On the OGA claim, the officers here were responding to a report of gunshots and the plaintiff conceded he was ordered to disperse. He conceded that he understood that order, yet he refused to follow it. This admitted refusal to follow an order alone gives rise to probable cause for obstructing governmental administration. Now there are a lot of what I call distractions in the plaintiff's argument, but one of them is that he didn't raise his voice. Well, raising your voice is not a required element of that crime, and I think the Cass case from the Second Circuit is squarely in point there, and in fact is less probative because here we have a gun run case, not just a protest. Also for disorderly conduct, the plaintiff's failure to follow the police order provides probable cause to arrest. I think the main issue on which the district court focused was whether there was public inconvenience. All that's required is that there be a reckless risk of public inconvenience, and here there are two separate things that establish that. First, the plaintiff himself admitted that a good number of people watched the unfolding events. This can be seen on the video, and I call your attention to the video. I counted about 10 people during the course of this commotion who stopped and watched. Maybe they moved on, but all there has to be is a risk. As well, if you look at the People v. Weaver case, Judge Graffio, a very similar situation. Excuse me, you have one more minute. The events were outside a hotel, and I hear it's after midnight, said people could be woken up, and that's enough for public inconvenience. So this is a situation where Sergeant Ferrara arrived at the scene 23 seconds later the plaintiff was arrested. You shouldn't be second-guessing the decision to arrest here. All right, the second issue is malicious prosecution. Malicious prosecution requires that the officer play an active role. Here, Sergeant Ferrara played no role. He never signed a complaint. He never spoke to the prosecutor. Nothing. And unfortunately, the theory that's called a collaboration theory that the plaintiff had here would widely expand liability for superior officers, and would deter officers from getting involved in necessary steps for an arrest, which just would be an unfortunate consequence. So absent that sort of active role, this claim should be dismissed, and similarly the fair trial claim, because that requires that the officer have forwarded information to the DA. Again, Sergeant Ferrara had no connection whatsoever to this prosecutor, and never spoke to the prosecutor, never signed anything in the form of a complaint that would initiate this prosecution. There isn't a single case that says simply signing off on arrest documents creates liability for either malicious prosecution or denial of fair trial. So we believe that all of those claims ought to be dismissed, you know, based on the plaintiff's own testimony. There is another key issue here, which is the indemnity issue. This is really a run-of-the-mill street stop. The plaintiff suffered no physical injury whatsoever. Indeed, the city offered to include our client in a settlement, acknowledging that indemnity is appropriate, and then inexplicably never got back to his counsel once the counsel tried to negotiate what that amount would be. Just, you know, taking $500 off an offer isn't enough to backtrack and take away indemnity. We have a study in the record showing that the city 99.5% of the time indemnifies its officers, and, you know, that sort of indemnity should have been granted here. All right, let's pause there and give the panel an opportunity to ask some questions. Judge Calabresi, do you have any questions? Yeah, I have a variety of different questions. First, where—and I'll ask them all, and then you can give—where on earth is there any indication of mens rea on the part of the person arrested? I mean, in this situation, given what has been found about lying and lying and lying, isn't it absolutely clear that there was no mens rea either to obstruct or, especially given the change from a gun to a completely different thing, or to do anything about governmental action, or to disperse? So that's my problem. I don't see any evidence of mens rea. I also have problems with the question—you talked about supervisory liability with respect to malicious prosecution, but that isn't the claim that is being brought. It's being brought that he was part of it, and that's why collaboration. I'm much more interested in, though, your argument about indemnification, because I am puzzled about whether there are any standards, whatever, that the city—that uses in deciding whom to indemnify and whom not, and I wonder whether that raises some serious, potentially even due process arguments, but which I'm not sure you've made. So I would rather—I'm more interested in your indemnity argument. The others just don't seem to make much sense to me. All right, maybe I can address the first of mens rea. Here, all that's required is that there be a reckless risk of inconvenience of the public. Now, in terms of OGA, clearly he intended to disobey an order, and that's all that's required for intent for obstruction. But for disorderly conduct, all there needs to be is a risk of public inconvenience, and that is established by the video. It's established by his own admission that a good number of people stopped and watched. You mentioned lying, and I think that is not really supported by this record. The misstatement about whether physical force was used, according to the testimony, was a mistake, and it's an understandable mistake. And by the way, it's something that happened after the arrest. So it's really not an issue. The arrest happened within 23 seconds. Plaintiff admitted that, and by the way, Sergeant Farrar wasn't even involved in the decision to arrest. He just assisted the arrest staff. Excuse me. We have one more minute out of the eight minutes. Thank you. But in terms of your key issue about indemnity, I think this is why it's so arbitrary. We've pointed to only two cases where the city has denied indemnity. They granted indemnity in cases like the Sean Bell case, the Eric Garner case, where people died. This is someone who had no physical injury whatsoever, and all of the facts that they rely on happened after the arrest. So there's no reason to say there shouldn't be indemnity for someone who is clearly performing their official duty by showing up and 23 seconds later assisting with an arrest. I think that the only standard that the Court of Appeals has articulated is that there needs to be a factual basis. Here there isn't a single factual basis, and I think the arbitrariness of this is confirmed by how the city corporation council dealt with this. They acknowledged that it was proper to indemnify this officer because he was offered to participate in this settlement, meaning the city would cover him. And we took $500 off this offer, and they never got back to us. That alone is arbitrary. But I think the points that you raised, Judge Calabresi, are why there needs to be a hearing here. This is an officer who is being punitively sacked with over a year's worth of his salary. And this is someone who is statutorily entitled to basically an insurance policy, and it's being taken away from him without even examining the factual basis. I have another question, and I don't know if there's any answer to it from the record. But in situations like this, does the police union indemnify? There have been some times in the record where a police union has contributed to a settlement. I think there was one that was decided by the city, but there's no automatic right to indemnify. Okay. Thank you. Judge Wexler, do you have any questions for Mr. Younger? Yeah. Mr. Younger, you say you tie your case to the defendant or the plaintiff's admission. The jury saw the video, didn't they? That's correct, and the video supports that admission. Well, I've seen the video, too, and I'm not so certain I agree with you. There's a reasonable inference. I've seen a number of inferences that might be able to come from that video. But does the jury have to believe everything that one witness tells them? They don't have to believe everything that the plaintiff says. Well, the plaintiff says one thing, but the jury can parse out some of what he says and some of what he doesn't say, can't they? They can make a decision as to credibility, can't they? Well, the hard thing is there's no evidence whatsoever in this record that he did anything but fail to – I watched the video, Mr. Younger. The young man stands there. He stands there, and suddenly he's pulled into the sidewalk, and then he's thrown to the ground. I watched the video. Yeah, I did watch the video, and, Your Honor, that leaves out two things. One, he starts pointing to his colleague, and then when they go to arrest him, as he admits, he sits down. But wait a second. Wait a second. He's arrested because he allegedly slapped someone and moved his arms wildly, neither of which he did. Actually, the arrest form says he's arrested because he failed to follow an order, and in the course of – The arrest itself is for failing to follow an order. The arrest for disorderly – You refer to the indemnification provisions, and you talk about the fact that the city's indemnified officers in other instances. The statute prohibits indemnification with regard to intentional wrongdoing, doesn't it? Intentional wrongdoing that caused the injury. And were punitive damages granted in this case? Not for the false arrest. What were they granted for? They were granted for the malicious prosecution and the fair trial claim. Was there a warrant against your client for malicious prosecution? Yes, Your Honor. And that, we believe, is no legal basis for whatsoever. So let me ask you about that then. Let's go right to the malicious prosecution. Didn't your client have to sign off on what Santiago's report said? He signed off on the arrest report, but if you look at the case law, the case law says – He made a representation that it was truthful? In the arrest report, but not in the complaint. He did not sign the complaint. Only Santiago signed the complaint. Wait a second. Wait a second. Didn't he have to approve the arrest report as being accurate? Yes, he reviewed it and signed off on the arrest, but that is not the prosecution. The prosecution – an officer does not start a prosecution. The DA does. I think I understand that, Mr. Younger. I think I understand that. But the arrest report then becomes the basis upon which the complaint is drawn, is it not? No, the basis was – and this is in the testimony – the DA called Officer Santiago, not Sergeant Ferrara, talked through the charge, and then Santiago signed a complaint. There's no testimony that Sergeant Ferrara had anything to do with it. So the question is, what role did Sergeant Ferrara have in the prosecution, not the arrest? If the arrest report had been inaccurate, did not Sergeant Ferrara have a responsibility to correct it? Not for purposes of the prosecution, because that's not what you rely on in a prosecution. He signed a prosecution-based complaint, and he had nothing to do with the complaint. You're honestly telling me that a supervisor can disregard an untruthful representation in an arrest report by an officer under his supervision. Is that it? No, no. It's a question of what is the liability for. The liability is not for the arrest. That's the false arrest claim. The liability is for the prosecution. And here, Sergeant Ferrara played no role in the prosecution. And if you look at the case law, all the case law talks about is, did you sign off on a complaint? Did you have communications with the prosecutor to encourage them to prosecute? I'm familiar with the case law, Mr. Younger. I'm familiar. And there isn't a single case that says signing off an arrest has anything to do with malicious prosecution. All right. I think we're way over, Mr. Younger. You're at about the 16-minute mark. I apologize. That's okay. You reserved a minute for rebuttal, but I want to get to Mr. Garber now. Mr. Garber? Yes. Good afternoon. May it please the court. I'm Mitch Garber. I represent Police Officer 1 Santiago. The case is unique in that Officer Santiago is facing the virtually unprecedented and draconian consequence of being personally liable for his actions during a routine arrest where the plaintiff suffered no injury whatsoever. The ruling, if allowed to stand, will have a chilling effect on police officers doing their jobs without fear of suffering catastrophic financial consequences if sued. And to answer the question before, having experience representing officers and their unions, the union is barred by virtue of the civil indemnification agreement between the city and the unions from paying a settlement, either for compensatory or punitive damages. There were four premises erroneously relied upon by the district court to deny indemnification to the appellants. General Municipal Law 50K requires the city to indemnify officers, and it's virtually unprecedented for an officer not to be indemnified. Our review, both of the cases and personal experience, have only been two cases where the city has denied indemnification after jury verdicts, and both of them are factually distinguishable. Specifically here, the district court relied erroneously on four premises to deny indemnification. First, the district court improperly considered the uncharged CCRB findings as a violation of the rules, regulations, and procedures, which clearly they are not. The CCRB findings are just allegations, much like an arrest in the criminal context. The police commissioner and the police commissioner alone has exclusive power over discipline, and it's not until an officer is formally charged by the department, has a due process hearing, and the commissioner signs off on an adverse finding, can an officer be deemed to be in violation of an NYPD rule. It's not disputed that disciplinary charges were not brought against either appellant, and consequently they were not afforded a hearing to contest the allegations. Secondly, the district court erroneously relied on the dismissal of the plaintiff's criminal cases. Dismissal by prosecutors occurred for many reasons unrelated to the validity of the arrest, and does not defeat probable cause. The totality here, the totality of the interaction that Officer Santiago had with the prosecutor's office can be measured in minutes, and I'm sure that there will be some questions on that, so I won't go into it until that happens. Third, the district court improperly relied on the jury's verdict against Officer Santiago for false arrest to find that he engaged in intentional wrongdoing within the meaning of General Municipal Law 50K3. And lastly, the district court used the video as a basis to deny indemnification, and it's our contention that when you look at the totality, the video helps, not hurts, the appellant's position vis-a-vis why there should be indemnification. The indemnification statute provides for judicial review, and courts have taken various positions, they've done that in various ways. Significantly, every court that's ever confronted the indemnification issue has required evidence independent of the city's self-serving reasons for denial. The city's opposition here merely reiterated the purported basis for denying indemnification in the first place, and rather than addressing the appellant's arguments about the disparate treatment of cases, the district court merely adopted the city's arguments. By doing so, by failing to conduct the hearing that was required, and that we requested, the analysis of the city's decision not to indemnify both appellants lacked factual basis. By failing to conduct an evidentiary hearing prior to its decision, at the very least, this court should remand the case for an evidentiary hearing on that issue, because as Judge Calabrese indicated, there are many issues with regard to the standards that are applied by the city in making these decisions. And here, clearly there was disparate treatment of the appellants as it relates to indemnification decisions that are made by the city every day, granting indemnification in situations where the conduct alleged is far more egregious than in this particular case. All right, let's pause there. Judge Calabrese, do you have any questions for Mr. Garber? Yeah, I'm not clear whether you are arguing that the city did not apply the state law correctly, even in the face of punitive damages being awarded, and that your argument is essentially a state law claim, or you are arguing that this is so arbitrary in its decision that it violates, or so vague that it violates due process, which would be a federal claim, but I've not really seen that last argument, so I'm just not clear which of these two things you are arguing. Well, Your Honor, here the district court limited its review to an analysis of whether there were some facts to support the city's decision, rather than conduct the judicial review, which federally our clients were entitled to, and that would be the banks case where Judge Marrero established that there is a judicial review right that our clients have with regard to the indemnification claim. That's a district court decision, right? That is. That was Yochemic v. Banks. Yeah, it's not a decision of this court. That's correct, Your Honor, and one of the things that we pressed in the district court, and I believe we stressed in our briefs, was that this essentially is a case where the issue of indemnification hasn't come up to this court because, frankly, the city has, with the exception of the two cases we cited, always indemnified, no matter what. And that includes cases where there was egregious conduct. It includes cases where there were punitive damage awards. They've indemnified in each and every situation, bar the two cases that we mentioned. The other cases are district court cases, and they've established that, at the very least, the right to judicial review requires that there be something more than the city's blanket assertion that the appellant is not entitled to indemnification. But there was something more than the blanket assertion. There was a trial, right? Right, yeah. Well, I'd like to add, I mean, you have a finding of punitive damages, which may require some intentional wrongdoing. The statute clearly says that you're not entitled to indemnification for intentional wrongdoing. Let me ask you this. If the law issue is, given the finding of punitive damages and intentional wrongdoing by a jury, is a police officer entitled under the law to indemnification? What the city's done previously is irrelevant, isn't it? I don't believe so, respectfully. Really? The city is allowed to disregard a state mandate? I mean, maybe perhaps previously it did, but the city's wrongful conduct doesn't rewrite a state law, does it? But it shows the arbitrariness of the determination made by the city. No, it shows the consistent violation by the city of its obligations to taxpayers to not indemnify officers for wrongful conduct. It doesn't show arbitrariness. It shows wrongful conduct by the city if it's been doing that. The state law is quite clear, isn't it? The law is clear that punitive damages would not allow for indemnification. Connecticut law is similar. I just wrote a decision on this. And so I don't understand. This is a law decision. If there's some finding of wrongful conduct, illegal conduct by the officer, a fact finder makes that finding, and that finding remains unimpeded or unchallenged or unchallengeable, then what's there another hearing for? And what's the relevancy of what the city has done in the past, whether right or wrong? Well, the city, as Mr. Young has stated, initially made the determination that they were going to indemnify both appellants. I understand that. I understand that. But the city doesn't decide ultimately what the law is. Courts do. We do. And so my question to you is, if the law issue goes against you, what does it matter what the city's done previously? Whether you like it or not, maybe bad policy by the city or maybe bad politics by the city. But that's not the issue we have. Well, the unfairness here is that that conduct by the city, which has essentially been left unchallenged up to this point, now puts the appellants in a situation where essentially they're out there doing their job. So prior violations of the law by the city with regard to indemnification justify continued violation of the city's, what the limits on the city's ability to indemnify according to state law. Is that it? Of course, I'm not saying that, Your Honor, but I'm saying that. OK. Essentially, what it comes down to is that there has been disparate treatment. And in this particular case, the record is not sufficient for this court to make a determination whether the judicial review that our clients were entitled to. I would suggest to you that what they did in the past is irrelevant, that what is before us is, is there a finding of fact that can't be questioned, that the conduct of your client for which the jury could assess punitive damages is supported by the evidence of the record in such a way that it was a law matter. He is not entitled as a matter of law to indemnification. It's a straight up law issue. But the record was not sufficiently developed at the district court level for there to be meaningful judicial review. We never got the chance to do what we asked to do, which was to conduct a hearing so that the city's policy with regard to the exact issue that you're raising punitive damages, intentional conduct. All of those matters should have been developed at the district court stage so that there was a meaningful record to answer the questions that are being posed now. Aren't you simply arguing that you relied on improper conduct by the city in the past to make payments in certain situations, and that your client is entitled to rely on the fact that the city had done that in the past. Even though what the city did in the past was illegal. Isn't that essentially the argument you're making? We're saying that you could phrase it in that manner, Your Honor. I think that we're claiming that our clients are being treated in a disparate manner. We're saying that the city, their indemnification decisions lack an articulable standard. We're saying that the standard should have been developed at the district court level in order to have a meaningful record for this court to review. And that wasn't done here. So at the very least, we're asking that the matter be remanded back for a fact-finding hearing so that the questions can be answered with regard to the standards that the city applies in making indemnification decisions. All right. Let's pause there. We've gone way over, but we want to hear now from the city. Good morning, Your Honors. This is Daniel Monson-Brown. I am a sister of Corporation Council on behalf of the city of New York. So I think we can just dive right into these indemnification questions. I think that what's critical to recognize here is three points. First of all, Section 50K3 governs indemnification decisions here, and that law requires that indemnification be provided only where the officers have not violated rules or regulations and where they have not engaged in wrongdoing or intentional recklessness. Second of all, the Williams v. New York case from the Court of Appeals, which is the controlling precedent from the Court of Appeals on this state law issue, leaves its determination to the Corporation Council and provides that the courts disturb that decision only where it lacks a factual basis. Third, what is critical to recognize about this case, which makes this case very different from the other cases the appellants are now appointing to for the first time on appeal, such as Mr. Garner's case and the tragic case of Sean Bell, the tragic case of Ramali Graham. What is different about this case is, first of all, the procedural posture. We went through a trial here. But also what's important to recognize about the city's indemnification decisions is oftentimes when they are made early on, sometimes before a lawsuit has even been filed, there are serious factual disputes about what happens. So for instance, in Mr. Graham's case, the officer said one thing, and Mr. Graham's family said another. If the Corporation Council during these earlier decisions finds credible an officer's account, then that provides a factual basis for indemnification. What we have in this case, which is very different, is we had a video come to light that very clearly showed that the officers not only violated Mr. Graham's constitutional rights but lied about it in official paperwork. And this provides not only a factual basis for denial of indemnification, but it's actually hard to see how you can even find a factual basis to indemnify in this case. This is very different. This is a very different case for that reason. And I think that the officers just completely ignore that. They point to other cases. They point to the happenstance that Mr. Graham was not seriously physically injured here despite what the officers did. But Section 50K-3 says nothing about the extent of injury, and that also leaves aside the nonphysical injury that the jury found. The officers say, well, we didn't physically hurt him, but that ignores that the false paperwork that they submitted required him to miss classes for 10 court appearances over the course of a year. Ultimately, though, the inquiry for this court is only whether Section 50K-3 provides for indemnification where there's a factual basis for the city to properly conclude that the officers violated rules and regulations, and in the alternative, that they acted either recklessly or committed intentional wrongdoing. That ends the inquiry. And the other cases that they point to are distinguishable for all the reasons that I have just said. All right. Let's take some time now for questions. Judge Calabresi, do you have any questions for Mr. Montserrat-Brown? No, I have no questions. Judge Wesley, do you have any questions for Mr. Montserrat-Brown? No. Okay. I don't either. Anything else you'd like to say, Mr. Montserrat-Brown, before you… I was hoping, Judge Calabresi, that we can engage in an interesting discussion about this issue based on your questions earlier. But if I have given the panel comfort that indemnification is not warranted here and that there's a rational basis for the decision… Don't infer comfort or lack of comfort. Is there anything else you want to say? Okay. If there are no questions, then I may want to address some of the questions just briefly that were posed to the appellants, which is whether there is any rhyme or reason to indemnification decisions. And I think that I've touched on that. I think it's also important to take note that two of the four cases that the appellants point to for the first time on appeal, mind you, so I don't even know that it's really properly an argument before this court. But one is the Albert William case, which is about 25 years old. I was in high school when this happened. And, in fact, not all the officers were indemnified there. So it completely undermines our argument. And the second one is Sean Bell's tragic shooting, which happened 16 years ago. Policing practices change. City policy changes over decades, right? And that is not a basis to find arbitrariness for the decision on this record. All of the concerns that were voiced were questions in hindsight about maybe should we really have taken that position in a shooting 25 years ago? And that is not a basis for an arbitrary or capricious challenge to this decision. I think that Judge Calabresi has hinted at the idea of a due process or a, I guess, perhaps a class of one equal protection challenge. The bar for those claims is incredibly high to show comparators that are on all four. The appellant officers here have no such comparators. The cases that they're belatedly bringing for the first time on appeal were settled before trial and had the sort of factual ambiguities that were not existent on this record. There's clearly a factual basis here for his denial of indemnification and the district court's recognition of that and upholding the Corporation Council's decision and analysis of the facts should be upheld by this court as well. Thank you. Thank you, Mr. Newton. You have six minutes. The first three without interruption. Go ahead. Good afternoon. This is may it please the court. This is John Knutson and I represent the plaintiff appellee, David Cooper. Can everyone hear me? Yes. Okay. I just want to clarify. I listened to everyone's argument and clarify some factual issues. I think everyone has seen the video and as pointed out earlier, the jury and the court are allowed to rely upon the video. It was undisputed objective evidence at the trial to the extent that defendants were arguing that plaintiff's testimony indicated certain things. The jury and court is allowed to look at the video and rely upon that. As I'm sorry, as Judge Calabrese pointed out, the video basically shows no mens rea, no intent on the part of Mr. Cooper to to do what the defendants are alleging. Essentially, they Mr. Younger was discussing how the Mr. Cooper was constantly. He categorized it as refusing an order just for clarification purposes. Mr. Cooper was standing on the stoop of his apartment and he was asked to move because of a noise complaint. And he asked why he had to move and did not get a response. I think in that sort of situation, that is a reasonable request. It does not necessarily demonstrate that he was intending on refusing an order, intending on causing public alarm. And so and Mr. Younger also indicated that he watched the video and he said maybe there was about 10 people watching, which I don't think that's supported by the video. But I think it's also goes to the lack of dispute of public nature or public harm element that I cite in the paper. You have one more minute. Thank you. New York Court of Appeals cases where the New York Court of Appeals has found in very similar context, no probable cause to arrest for disorderly conduct on these on these type of cases. Baker and I think the Baker specifically says that, you know, there's 10 people watching and the New York Court of Appeals basically said that is not sufficient by itself to indicate that there was a public harm element here. All right. Let's pause for some questions. Judge Calabresi, do you have any questions for Mr. Newton? I have no question. And Judge Wesley, do you have any questions? No. All right. Neither do I. Anything else you'd like to say, Mr. Newton? I just want to address one other point, which is the the argument about his argument about initiation. And I think he claims that he didn't initiate the criminal proceeding. I, that is not correct. Initiation can include withholding facts, which was in the jury charge. Because for that into the jury charge, and that's consistent with New York Court of Appeals decision alone. The New York NY 2nd, 78, 82, 83. And the 2nd Circuit in Dufort, the city of New York at 874 F3338353 said initiation is met when police officers forward statements without sharing statements for suspects qualified immunity is inappropriate. Old. Which is obviously plainly indicated by the facts of this case. And he decided with Santiago on the criminal charges and then allowed the plainly wrong as he admitted arrest report to be forwarded to the prosecutor. All right. Okay. Thank you very much. We'll now hear rebuttal argument. Mr. Younger, you have a minute. Thank you. Just on that last point, the case law that forwarding statements here, Sergeant for our afforded nothing. So you have to have some conduct that you will have required to change. But let me focus on indemnity. I think the question is, is there an articulable standard? You're talking about police officers who are out in the streets protecting all of us who are entitled to do something in the course of their job to protection. And they're left with a standard list system. And the test here is really, should there be judicial review, which is what the case law says? And I think, unfortunately, the district court just punted here. There was a. Did I miss something? Who's a trial? No, no, no. Yeah, there was a trial. But but just finding false arrest, for example, doesn't mean that you have violated a police rule. Charge on punitive damages, Mr. Younger. There was one charge. Excuse me, Mr. Younger. What did it require? It required wrongdoing. Did it not? Yes, but it wasn't sustained for false arrest. There was no. The jury rejected punitive damages for. What about malicious prosecution? Yeah, but you have the law is you have to analyze this claim by claim. It's just like an insurance policy. And if he's entitled to indemnity on one of the claims. And remember, for false arrest, this officer shows up. Twenty three seconds later, the person is arrested and then he comes in with the arrest. So counsel, if your argument is that these lawyers, these police were relying on the set of behaviors by the city in identifying. The answer hasn't been in this case. The answer is that your union and the city and the state should set up standards which are different or of another sort. We have a particular case in which the law requires no indemnification. And you're asking us, you're saying that the way the law is, is unfair to my client. But the law often is unfair. It just happens to be that way. Actually, I think what we're saying, Your Honor, is the law is being applied here is unfair to our client because there wasn't even a hearing where we could have explored why it was that the city offered to include us. Our client in a settlement, which, you know, by itself acknowledges that indemnity is appropriate. Why it is that they relied on things that happened long after the arrest as a basis to deny indemnity. None of the things. And I want to address head on this issue about an erroneous statement and the arrest report that happened back at the state, at the precinct after the arrest took place. So, you know, it's not a basis to say the arrest itself was invalid or at least, you know, you know, subject to believing something in the course of his job duties. You know, this is an officer who showed up. Twenty three seconds later, someone is arrested and is being told, even though he went to the aid of an officer and trying to help someone who was not cooperating with that arrest, he's not getting he's out on his own. He's going to have to pay this out of his own pocket, even though that was clearly something done in the course of his job. OK. All right. Thank you, Mr. Younger. We'll now hear from Mr. Garber for a minute. Thank you. Addressing first council for the city statement about the video. The video was absolutely available to the city and they had it at the time they made the initial decision that they were going to indemnify the appellants in this case. It was only about a dispute about five hundred dollars. Well, sure, because because it can be you. I suppose you could view it very different ways. Who knows how a trial comes out? The point that he made was, is that they settled things before trial because you're not certain. Some claims might not necessarily be indemnifiable after trial. A punitive damages are awarded. Ferraro and Santiago went ahead and had the trial and the jury found against them. But respect the question. Well, no, no respect. The question then becomes a law question. The law question is, were punitive damages awarded? I would submit to you that the law, that statute does not allow a municipality to indemnify an officer where punitive damages are awarded. Your Honor, as a question of fact, we raised to the district court the fact that the city settled the case out from under our clients over a five hundred dollar disagreement about whether or not they should contribute. That is part of the record. It was raised in the court below. It was raised in our papers. I understand what you're saying, but I don't see how that's in any way relevant to a jury finding of punitive damages. Absent the jury finding being thrown out, there's certainly a legitimate reason for the city not to pay those damages because the jury's made a finding of intentional wrongdoing on your client's behalf. Not as to the false arrest. What Mr. Young has said with regard to his client also applies to the office of Santiago. The city basically painted it with a broad brush. They denied indemnification for everything, and they never analyzed it in the way that they were required to by 50-K-3. Counsel for the city... So your argument is solely limited to the issue of false arrest? It's the totality of the circumstances. Just answer my question. Are you seeking indemnification only as to false arrest or for all the other damages assessed against your client, punitive damages included? For the claims that do not require punitive damages, in my client's case, there was no finding of punitive damages on the false arrest. And with regard to the other claims, there were findings of punitive damages. So are you restricting your argument right now? Tell me. Do you concede... Tell me right now. Do you concede that your client is not entitled to indemnification under the statute as a matter of law, given that jury finding, after that jury finding being overturned, except as to the false arrest? Your Honor, without trying to be evasive and trying to answer the question the best I can, I am saying that the record that is before this court is insufficient, and at the very least, it should be remanded for a hearing before I can even answer that question. Notwithstanding the punitive damages award, I take it? Notwithstanding the punitive damages award. All right. All right. We will conclude. Thank you. We'll reserve decision.